**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph Anthony CRUZ, Defendant–
Appellant.**

No. 94–10282.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 14, 1995.

Decided March 20, 1995.

F. Randall Cunliffe, Cunliffe, Cook, Maher & Keeler, Agana, Guam, for defendant-appellant.

Karon V. Johnson, Asst. U.S. Atty., Agana, Guam, for plaintiff-appellee.

Before: FLETCHER, PREGERSON, and RYMER, Circuit Judges.

RYMER, Circuit Judge:

We must decide whether 18 U.S.C. § 922(j), which makes it unlawful for a person to receive "any stolen firearm" "which has been shipped or transported" in interstate commerce knowing that the firearm "was stolen," applies to any firearm that has travelled in interstate commerce and is thereafter stolen, or only to a firearm which has travelled in interstate commerce as a stolen firearm.

Joseph Anthony Cruz was convicted on a conditional guilty plea of receiving stolen firearms in violation of § 922(j). Knowing that grenades were military issue and stolen, Cruz "received" them in Guam and disposed of them in Guam. He moved to dismiss the indictment on the ground that these grenades are excludable under the government exemption in § 925(a)(1), and thus that § 922(j) cannot apply, because the firearms which he received had been transported to Guam by the Navy. The district court correctly denied his motion to dismiss on this ground. However, on appeal, Cruz argues for the first time that § 922(j) cannot apply as a matter of law when the theft occurs after the interstate commerce because the statute has to do with transportation in interstate commerce of a "stolen firearm," not a firearm which has been transported in interstate commerce and is thereafter stolen. The government does not contend that we should not consider this argument. Having done so, we must reverse. The text of § 922(j) is reasonably susceptible of two interpretations—that a *stolen* firearm must travel in interstate commerce, and that the firearm must have travelled in interstate commerce but may be stolen at anytime; the legislative history is equally ambiguous; and Congress has clearly stated in other parts of the gun control laws that the interstate shipment may have occurred "at any time" but did not do so in § 922(j). As this is a criminal case and the issue goes to our jurisdiction, we construe the statute narrowly to reach only the receipt of stolen firearms which have moved in interstate commerce as stolen firearms.[1]

1. Although it is not material to our decision, we note that § 922(j) has since been amended to apply to any stolen firearm "which has been shipped or transported in, interstate or foreign commerce, either before or after it was stolen." We apply the statute as it read in 1993, when the offense in this case was committed.

## I

■ We can easily dispose of Cruz's first argument, that these firearms never travelled in interstate commerce for purposes of § 922(j) because their interstate transportation was by the United States Navy from the mainland to Guam and they are thus deleted from the federal gun laws by virtue of the government exemption in § 925(a)(1). Section 925(a)(1) provides that

> The provisions of this chapter [including § 922(j) ] ... shall not apply with respect to transportation, shipment, receipt, possession, or importation of any firearm or ammunition imported for, sold or shipped to, or issued for the use of, the United States or any department or agency thereof....

We have previously held that § 925(a)(1) applies to use of a firearm for a government purpose, *Hyland v. Fukuda*, 580 F.2d 977, 979 (9th Cir.1978), and the Sixth Circuit has previously rejected an argument similar to Cruz's. *United States v. Wolak*, 923 F.2d 1193, 1197–98 (6th Cir.), *cert. denied*, 501 U.S. 1217, 111 S.Ct. 2824, 115 L.Ed.2d 995 (1991). While § 925(a)(1) excepts use of a firearm for a government purpose and in turn, receipt of the firearm for government use, it does not permanently exempt those firearms from the federal gun laws. As the district court held, the transportation element of § 922(j) can be satisfied by movement of the grenades from the continental United States to Guam. Therefore, since Cruz's receipt of the firearms was not for government use, neither the grenades nor his receipt of them is excluded from the application of § 922(j) by § 925(a)(1).

## II

■ Cruz's second argument is a good deal more difficult. He contends that there is no interstate nexus because the grenades were not stolen before their shipment in interstate commerce. Rather, he argues,

§ 922(j) requires receipt of firearms that were "stolen firearms" before their interstate shipment. The government responds that the legislative history of the applicable version of § 922(j) indicates that it was enacted to permit prosecution for transactions involving stolen firearms where the firearms—whether stolen or not—have already moved in interstate commerce.

We have found only one published appellate opinion which addresses this question: *United States v. Honaker*, 5 F.3d 160 (6th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1226, 127 L.Ed.2d 571 (1994).[2] In *Honaker*, a divided panel held that § 922(j)'s jurisdictional prong allows federal prosecution if the firearm travelled in interstate commerce before or after the theft. Acknowledging that the language of § 922(j) may be somewhat ambiguous, the majority believed that the legislative history resolves the ambiguity. Concurring, Judge Guy noted his own sense that "Congress sought to deploy the full extent of federal jurisdiction, as emanating from the Commerce Clause, to combat trafficking in stolen weapons," and that if it had intended to limit § 922(j) only to firearms that had been stolen prior to their interstate shipment, Congress knew how to say so. 5 F.3d at 164. Judge Nelson dissented for the opposite reason: "To make a federal crime out of virtually every theft of a firearm would be to effect a rather dramatic expansion of the jurisdiction of the federal courts—and if that had been the intent of Congress, one supposes that someone in Congress, or someone explaining the legislation pending before Congress, would have mentioned it. No one did." *Id.* at 165. While we hesitate to part company with the Sixth Circuit, we find Judge Nelson's reasoning more persuasive.[3]

### A

At the time Cruz received the grenades, § 922(j) provided:

**2.** A district court opinion, *United States v. Brooks*, 859 F.Supp. 425, 427 (D.Mont.1994), follows *Honaker* with little discussion. The court wrote that "it is clear that Congress intended the amendment to expand federal jurisdiction to permit prosecution where the firearms moved in

interstate or foreign commerce before being stolen, as alleged in Count II."

**3.** A circuit conflict here has less significance than otherwise because of the 1994 amendment to § 922(j).

It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any stolen firearm ... which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce, knowing or having reasonable cause to believe that the firearm ... was stolen.

18 U.S.C. § 922(j).[4]

Literally read, this could proscribe transactions in a stolen firearm "which has been shipped or transported in" interstate commerce—or it could proscribe transactions in a firearm "which has been shipped or transported in" interstate commerce and is stolen at the time of the receipt. Put another way, the phrase "which has been shipped or transported" could modify "firearm," whereas "stolen" could describe the firearm's properties at the time of the proscribed transaction; or it could modify "stolen firearm," lumped together, such that the offense is receiving a firearm that had been stolen and then shipped as a "stolen firearm" in interstate commerce.

In 1990, Congress added the phrase "which has been shipped or transported in [interstate commerce]" to § 922(j). Pub.L. 101–647 § 2202(a). There is no question that the change was intended to expand the scope of the interstate nexus that supports jurisdiction. However, since courts had previously concluded that the firearm must not have come to rest at the end of its interstate journey, *United States v. Jones,* 564 F.2d 1315, 1316 (9th Cir.1977), and that the firearms must be stolen at the time of the interstate shipment, *see United States v. West,* 562 F.2d 375 (6th Cir.1977), *cert. denied,* 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515

(1978), it is unclear whether the amendment merely removed the contemporaneous requirement, or also removed the requirement that the firearm travel after the theft.

The government argues that when § 922(j) is read in conjunction with § 922(i),[5] the ambiguity is resolved because if Cruz's interpretation were correct, § 922(j) would prohibit only the same conduct as § 922(i). We disagree. Under Cruz's interpretation, if guns that had been previously transported in interstate commerce were stolen in California by X, sold to Y (still in California), who then shipped them to Z in Nevada, X would have violated neither section, Y would have violated only § 922(i), and Z would have violated only § 922(j). This reading leaves neither of the subsections without meaning.

We find comparison with § 922(k) more instructive.[6] Section 922(k), which applies to firearms with altered serial numbers, was amended at the same time that § 922(j) was amended. To § 922(k), the bill added "or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, *at any time,* been shipped or transported in interstate or foreign commerce." Pub.L. 101–647 § 2202(b) (emphasis added). If difference in language means anything, the difference between these two closely related sections—which were sequential in both the original statute and the bill making the amendments—suggests an intentional distinction between a stolen firearm, which must have travelled in interstate commerce as a "stolen firearm," and a firearm with the serial number altered, whose receipt is criminalized if the firearm has travelled in interstate commerce "at any time."[7]

---

4. The term firearm explicitly includes grenades. §§ 921(a)(3)(D) and 921(a)(4)(A)(ii).

5. 18 U.S.C. § 922(i) provides:
   It shall be unlawful for any person to transport or ship in interstate or foreign commerce, any stolen firearm or stolen ammunition, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

6. As amended, 18 U.S.C. § 922(k) provides:
   It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number

removed ... or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed ... and has, at any time, been shipped or transported in interstate or foreign commerce.

7. The *Honaker* concurrence notes that the language in 18 U.S.C. § 2313 ("which has crossed a State or United States boundary *after being stolen* ") (emphasis added) shows that Congress knew how to make clear a requirement that the stolen property travel after theft. 5 F.3d at 164 n. 7. However, we are more taken with the comparison to § 922(k) because prior to amendment, § 922(j) already included the post-theft

Thus as we read it, the text is ambiguous and nothing in its context or structure suggests that either of the possible interpretations is unreasonable.

## B

Nor does the legislative history shed any meaningful light on how to construe the phrase "which has been shipped or transported in interstate" commerce in relation to transactions in a "stolen firearm," for the legislative history suffers the same ambiguity. For example, the House of Representatives Committee Report states:

Section 702 amends section 922(j) to expand Federal jurisdiction to permit prosecution for transactions involving stolen firearms and firearms missing serial numbers where the firearms have already moved in interstate or foreign commerce.

H.R.Rep. No. 681, 101st Cong., 2d Sess., pt. 1, at 106, *reprinted in* 1990 U.S.C.C.A.N. 6472, 6510. Whether the phrase "have already moved in interstate" commerce modifies "firearms" or "stolen firearms" is unclear; it could refer either to movement before or after the theft, or only to movement after the theft but before receipt. Neither is the statement of Assistant Attorney General Dennis before the House Judiciary Committee dispositive. He indicated that the amendment would

expand federal jurisdiction to permit federal prosecution for trafficking in firearms which have been stolen or have had the serial number removed or altered and which have moved in interstate commerce at any time.

Comprehensive Violent Crime Control Act of 1989: Hearing Before the Subcomm. on Crime of the House Comm. on the Judiciary, 101st Cong., 2d Sess. 79–80 (1990) (statement of Edward S.G. Dennis, Assistant Attorney General). While the text of Dennis's statement tends to support an expansive interpretation, a footnote remarks that under § 922(j) and (k) (prior to the amendment), it was an offense to traffic in such firearms only "if they are actually moving in or a part

commerce requirement and the § 922(k) amendment was contemporaneous with the § 922(j)

of interstate commerce at the time of the offense," *id.* at 80 n. 10, which tends to support the less expansive interpretation that the legislation was aimed at removing the contemporaneousness requirement rather than the requirement of travel in interstate commerce as a stolen weapon.

The government argues that after *Barrett v. United States*, 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976), it is clear that the phrase "which has been shipped or transported in interstate" commerce will apply to firearms which have been moved at a prior time, and have come to rest by the time the defendant *commits an offense concerning* them. In *Barrett*, the Court applied § 922(h), which makes it unlawful for a felon to possess a firearm which had been shipped or transported in interstate commerce, to a firearm which had been transported in interstate commerce but had come to rest in a dealer's showroom before its purchase by the felon. While the phrase having to do with interstate commerce is the same here as in *Barrett*, § 922(h) is different from (j) because it has no language similar to § 922(j)'s requirement that the firearm be stolen. There is no question in this case that Cruz could be prosecuted even though the interstate movement had been completed. *Barrett* is accordingly unhelpful in determining whether, under § 922(j), the firearm must have travelled in interstate commerce as a "stolen firearm."

On balance, we cannot say that either prior construction of the phrase "which has been shipped or transported in interstate" commerce, or the legislative history of its inclusion in § 922(j), removes the ambiguity of whether it modifies "stolen firearm" or "firearm" alone.

## C

We are mindful of admonitions by the Supreme Court and our circuit that federal gun laws are to be given their broadest permissible application. *See Scarborough v. United States*, 431 U.S. 563, 575, 97 S.Ct. 1963, 1969, 52 L.Ed.2d 582 (1977); *Hyland* 580 F.2d at

amendment.

980. At the same time, "[b]ecause construction of a criminal statute must be guided by the need for fair warning, it is rare that legislative history or statutory policies will support a construction of a statute broader than that clearly warranted by the text." *Crandon v. United States,* 494 U.S. 152, 160, 110 S.Ct. 997, 1002–03, 108 L.Ed.2d 132 (1990).

Where, as here, Congress has failed to make clear its intent, and where it could have written the statute without grammatical ambiguity, we resolve any doubt in favor of the defendant. *See Ratzlaf v. United States,* — U.S. ——, ——, 114 S.Ct. 655, 663, 126 L.Ed.2d 615, 627 (1994). Therefore, we hold that as the statute is ambiguous, and the legislative history is inconclusive, § 922(j) as amended in 1990 applies only to receipt of a firearm which has travelled in interstate commerce as a stolen firearm.

REVERSED.