UNITED STATES of America,
Plaintiff–Appellee,

v.

Gabriel Valdez ANDAVERDE,
Defendant–Appellant.

No. 94–30321.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 21, 1995.

Decided Aug. 24, 1995.

Stephen R. Hormel, Federal Defenders of Eastern Washington and Idaho, Spokane, WA, for defendant-appellant.

Gregory M. Shogren, Asst. U.S. Atty., Yakima, WA, for plaintiff-appellee.

Before: NOONAN and HAWKINS, Circuit Judges, and RONALD S.W. LEW,[*] District Judge.

LEW, District Judge:

Gabriel Andaverde appeals from his criminal conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and for possessing a stolen firearm in violation of 18 U.S.C. § 922(j). He contends that 18 U.S.C. § 922(g)(1) violates the Fifth and Tenth Amendments, that several of his post-arrest statements were inadmissible, and that an insufficient interstate commerce nexus was shown at trial under 18 U.S.C. § 922(j). We affirm the district court on all issues relating to his conviction under 18 U.S.C. § 922(g), but, in light of this court's recent decision in *United States v. Cruz*, 50 F.3d 714 (9th Cir.1995), reverse as to his conviction under 18 U.S.C. § 922(j).

**I.**

On January 31, 1991, Andaverde was convicted in state court of first degree burglary and was subsequently imprisoned. At the time of the events at issue here, he had been released and was on probation. Corrections Officer Spurgeon Keeth supervised Andaverde as part of his probation. Andaverde lived at his mother and step-father's home, where he had his own bedroom.

---

[*] Honorable Ronald S.W. Lew, United States District Judge for the Central District of California, sitting by designation.

On October 27, 1993, police officers executing a search warrant[1] searched the family home, finding a shotgun underneath Andaverde's bed in his bedroom. This shotgun had been taken from a neighbor's truck a few days before. After finding the gun, the police took Andaverde to the police station, where he was given a *Miranda* warning by Detective Julius Schenck. After advising Andaverde of each of his rights, Schenck asked him if he understood the right. Andaverde separately indicated that he understood each right, and he signed a written waiver form. Schenck questioned him for at most two hours and then walked Andaverde out to where Corrections Officer Keeth was waiting, directly outside of Schenck's office. Schenck told Keeth that Andaverde had been *Mirandized,* had made a statement, and that Keeth could now talk to Andaverde.[2]

Without reinforming Andaverde of his rights, Keeth began questioning him about a possible probation violation for possessing a gun. Andaverde told Keeth that his brother had stolen the gun and brought it into the house, but that he did not know how it got underneath his bed.

Schenck testified that when Andaverde and Keeth began talking, he remained on the scene and listened to the questioning.[3] He heard Andaverde make the statement about his brother and the gun.

The next day, October 28, Keeth again questioned Andaverde at the jail, again without issuing a *Miranda* warning. During that interview, Andaverde initially denied knowing how the shotgun got under the bed. However, after Keeth expressed his disbelief,

Andaverde admitted that he himself had put the gun under his bed.

On October 29, 1993, Andaverde indicated that he wanted to speak to Bureau of Alcohol, Tobacco, and Firearms ("ATF") Agent Robert Wyatt, who was meeting with Andaverde to fingerprint him. Before taking the statement, Wyatt advised Andaverde of his rights. Andaverde refused to sign a waiver form. However, he acknowledged that he understood his rights, and he subsequently made statements to Wyatt. The record is unclear as to whether those statements were made in response to questions by Wyatt, or were spontaneously offered by Andaverde. During this interview, Andaverde stated that he knew that the shotgun was under his bed. Subsequently, Andaverde refused to answer further questions.

At trial, the district court judge refused to dismiss the criminal indictment. Andaverde was subsequently convicted in federal court under 18 U.S.C. § 922(g)(1) as a convicted felon in possession of a firearm, and under 18 U.S.C. § 922(j) for storing or concealing a stolen firearm.

## II.

█ The first count of the indictment was brought pursuant to 18 U.S.C. § 922(g)(1), which prohibits convicted felons from possessing firearms. Andaverde contends that he was not a convicted felon subject to prosecution under that statute, and, additionally, that his prosecution violates the Fifth and Tenth Amendments. We apply *de novo* review to a denial of a motion to dismiss a

---

**1.** The officers were searching for evidence relating to the burglary of a sporting goods store.

**2.** The record is unclear as to the actual time gap between the *Miranda* warning and Keeth's questioning of Andaverde. At the voluntariness hearing, Keeth estimated that the gap was "two hours at the very most." However, according to Schenck, his interrogation of Andaverde lasted about half an hour, and there was at most a ten minute time period between the interrogations, which would make the interval between the *Miranda* warning and Keeth's questioning under an hour.

**3.** On direct examination, Detective Schenck testified as follows:

Q: What happened after you interviewed him?
A: Once I was done interviewing him, I walked him out of my office. Sitting directly outside of my office was Spurgeon Keeth.
Q: Okay. Tell the jurors what happened.
A: I told Spurgeon Keeth that I was done taking a statement from him; that I had Mirandized him. He understood his rights, and then I told him he could talk to Gabriel. At that time he started talking—you know, Gabriel and Spurgeon started talking—and I kind [?] off to the side and listened for a little while. I didn't record the exact specifics, but what I heard was just basically—

criminal indictment on constitutional grounds. *United States v. McDougherty,* 920 F.2d 569, 571 (9th Cir.1990), *cert. denied,* 499 U.S. 911, 111 S.Ct. 1119, 113 L.Ed.2d 227 (1991). We hold that the statute applies to Andaverde, and that his prosecution did not violate the Constitution.

Under 18 U.S.C. § 922(g)(1), convicted felons are prohibited from possessing firearms. The statute provides that:

> It shall be unlawful for any person ... who has been convicted in any court of [ ] a crime punishable by imprisonment for a term exceeding one year ... to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

Courts determine what constitutes a conviction for the purposes of § 922(g)(1) by looking to the law of the jurisdiction where the proceeding was held. 18 U.S.C. § 921(a)(20). Section 921(a)(20) provides that:

> Any conviction which has been expunged, or set aside *or for which a person has civil rights restored* shall not be considered a conviction for purposes of this chapter, unless such a pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

(emphasis added). Under this provision, enforcement of § 922(g)(1) depends upon the felon's status under state law. Consequently, a federal court must look to state law in order to determine whether a convicted felon falls into the category of persons prohibited from possessing firearms.

■ Andaverde first argues that, because Washington state law did not prohibit him from possessing a shotgun,[4] he should be considered as having had his civil rights restored. Therefore, Andaverde contends, his conviction is not a conviction for § 922(g)(1)'s purposes.

■ Andaverde is incorrect. In determining whether a felon continues to suffer a civil rights disability, the Ninth Circuit considers whether the felon has been restored the right to vote, sit on a jury, and hold public office. *United States v. Meeks,* 987 F.2d 575, 578 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 314, 126 L.Ed.2d 261 (1993); *United States v. Dahms,* 938 F.2d 131, 133 (9th Cir.1991). Andaverde contends that this restoration analysis should turn on whether state law restores the right to bear arms. Even if, in determining whether a felon's civil rights have been restored, the court should look to state law giving felons the right to bear arms, the restoration of this single right does not prevent prosecution under § 922(g)(1). A restoration of rights must be "substantial," not merely de minimis. *Meeks,* 987 F.2d at 578; *Dahms,* 938 F.2d at 133. We held in *Meeks* that, under Missouri law which allowed convicted felons to vote and hold office, but which did not restore the right to serve on a jury, to hold office as a sheriff, or to be a highway patrol officer, the defendant had not had his civil rights "substantially restored" and thus could be prosecuted under § 922(g)(1). *Meeks,* 987 F.2d at 578. In contrast, the *Dahms* court ruled that a defendant who had been restored the right to vote, hold public office, and serve on a jury had had his rights substantially restored within the meaning of § 921(a)(20). *Dahms,* 938 F.2d at 134.

Under Washington state law, a felon's civil rights are restored in full when he completes the requirements of his sentence and is thereby discharged. Wash.Rev.Code § 9.94A.220. However, until a felon is discharged, state law prevents him from serving on a jury, holding public office, and voting. Wash.Rev.Code §§ 2.36.070(5) (Supp.1995), 29.65.010(3); Wash. Const. Art. 6, § 3. There is no evidence in the record that Andaverde has been discharged. Andaverde thus substantially lacked civil rights when he was prosecuted under § 922(g)(1). *Cf. Dahms,* 938 F.2d at 134. Therefore, the

---

4. On January 31, 1993, the date of Andaverde's federal conviction, Washington state law only prohibited him from possessing short firearms and pistols. Wash.Rev.Code § 9.41.040. This statute was amended in July 1994 to prohibit persons convicted of a serious offense from possessing any firearm. *See United States v. Herron,* 45 F.3d 340, 342 n. 2 (9th Cir.1995).

district court did not err in ruling that he could be prosecuted under that statute.

### A.

Andaverde further contends that his conviction under § 922(g)(1) violates the equal protection assurances contained in the Due Process Clause of the Fifth Amendment because § 922(g)(1) differentiates between convicted felons who are on probation and those who are not.

This argument is unpersuasive. Congress could rationally conclude that convicted felons who have successfully completed their probation, and, presumptively, have been reintegrated into society may better be trusted with the right to possess firearms than convicted felons who have yet to prove themselves rehabilitated. Andaverde's equal protection claim must fail.

### B.

Andaverde argues that his prosecution impermissibly interferes with state laws allowing felons to bear firearms, because that area of regulation was left to the states under § 922(g)(1). We disagree. Section 922(g)(1) rests on state law governing convictions, not on state law regulating felons' possession of firearms. The section requires the courts to look at the state's definition of convictions, not at the state's substantive regulation of convicted felons. Congress may regulate possession of firearms without violating the Tenth Amendment. *United States v. Tomlin,* 454 F.2d 176, 176 (9th Cir.), *cert. denied,* 406 U.S. 924, 92 S.Ct. 1792, 32 L.Ed.2d 125 (1972). Section 922(g)(1) is a permissible exercise of this power.

### III.

Andaverde argues that his post-arrest statements to Corrections Officer Keeth were involuntary because Keeth never informed him of his rights. The voluntariness of a confession is determined by the totality of the circumstances, which we review *de novo. Northern Mariana Islands v. Mendiola* 976 F.2d 475, 484 (9th Cir.1992). We conclude that the district court was correct in admitting both statements.

### A.

Andaverde contends that his statement to Keeth on the day of his arrest, October 27, was inadmissible because Keeth failed to inform him of his rights, even though the police had *Mirandized* him at most two hours previously, and there was at most a ten minute interval between his questioning by police and his questioning by Keeth.

Statements made to a probation officer by a person in custody are subject to a voluntariness determination. *Jones v. Cardwell,* 686 F.2d 754, 757 (9th Cir.1982) (reserving the question of whether a defendant in custody is entitled to a *Miranda* warning before questioning by a probation officer). When a suspect is subject to custodial interrogation without first being advised of his rights, "*Miranda* dictates that the answers received be presumed compelled and that they be excluded from evidence at trial in the State's case in chief." *Oregon v. Elstad,* 470 U.S. 298, 317, 105 S.Ct. 1285, 1297, 84 L.Ed.2d 222 (1985).

We have previously ruled that an inadequate *Miranda* warning given by a parole officer renders the defendant's subsequent confession inadmissible. *United States v. Bland,* 908 F.2d 471, 474 (9th Cir.1990), *cert. denied,* —— U.S. ——, 113 S.Ct. 170, 121 L.Ed.2d 117 (1992). In *Bland,* we ruled that the defendant's statement made nine days after arrest should have been excluded because the parole officer failed to inform the defendant of his right to an attorney during questioning. *Id.* at 474. *Bland* did not discuss previous police warnings, if any, given to the defendant before his interview with the parole officer.

We note that the Fifth Circuit has held that probation officers must *Mirandize* defendants in custody. *United States v. Deaton,* 468 F.2d 541, 544 (5th Cir.1972), *cert. denied,* 410 U.S. 934, 93 S.Ct. 1386, 35 L.Ed.2d 597 (1973). While we concur with *Deaton's* result, we reject its reasoning that questioning by probation officers is inherently more coercive than questioning by other law enforcement officers. Such reasoning

implicitly conflicts with the Supreme Court's ruling in *Minnesota v. Murphy* that a probation officer need not *Mirandize* a probationer before a non-custodial meeting, even if the probationer is compelled to attend the meeting and answer questions. 465 U.S. 420, 431, 104 S.Ct. 1136, 1144, 79 L.Ed.2d 409 (1984). In *Murphy,* the Supreme Court refused to view the probationer-probation officer relationship as requiring treatment different from other non-custodial questioning. In rejecting the argument that a probation meeting is inherently coercive, the Supreme Court compared a probationer to a witness subpoenaed to testify before a grand jury. The Court held that, in line with cases ruling that grand jury witnesses are not entitled to *Miranda* warnings, a probationer is similarly not entitled to warnings. *Id.* at 431, 104 S.Ct. at 1144. The *Murphy* Court further rejected the same argument raised here, that the probationer-probation officer relationship is intrinsically misleading as to its adversarial nature. As the Court wrote,

> A probationer cannot pretend ignorance of the fact that his probation officer "is a peace officer, and as such is allied, to a greater or lesser extent, with his fellow peace officers." Absent some express or implied promise to the contrary, he may also be charged with knowledge that "the probation officer is duty bound to report wrongdoing by the [probationer] when it comes to his attention, even if by communication from the [probationer] himself."

*Id.* at 432, 104 S.Ct. at 1145 (quoting *Fare v. Michael C.,* 442 U.S. 707, 720, 99 S.Ct. 2560, 2569, 61 L.Ed.2d 197 (1979)) (internal citations omitted).

We therefore hold that custodial statements made to probation officers are subject to the same voluntariness analysis as statements made to other law enforcement officers.

Title 18 U.S.C. § 3501(b) sets forth the factors which a court must review to determine whether a confession is voluntary. These include:

> (1) the time elapsing between arrest and arraignment of the defendant ..., (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

18 U.S.C. § 3501(b). The court must look at the totality of circumstances and the entire course of police conduct in determining voluntariness. *Medeiros v. Shimoda,* 889 F.2d 819, 824 (9th Cir.1989), *cert. denied,* 496 U.S. 938, 110 S.Ct. 3219, 110 L.Ed.2d 666 (1990). There is no rigid rule relating to the passage of time or a break in events. *Id.*[5]

The first factor clearly weighs in favor of voluntariness because Andaverde was questioned on the day he was arrested. The second factor also supports voluntariness because Andaverde knew the nature of the offense with which he was charged. A defendant need not be advised before he confesses

---

5. Andaverde argues that his lack of mental acuity and education should also be taken into account in determining whether his statements were voluntary. Although Andaverde has been adjudged mentally competent, the record shows that he is mentally "slow" and does not always understand instructions. Furthermore, Andaverde has only a tenth-grade education. The district court reduced Andaverde's sentence for diminished mental capacity.

Low intelligence level and lack of education must be taken into account when determining the voluntariness of confessions. *Northern Mariana Islands v. Mendiola,* 976 F.2d 475, 485 (9th Cir.1992). However, there is no showing here that Andaverde did not understand his rights or was confused about why he was being questioned. Detective Schenck testified that when he advised Andaverde of his rights, the *Miranda* warning was in the form of seven statements, and that Andaverde separately indicated that he understood each of the seven statements. Additionally, Andaverde's "slowness" and tenth-grade education does not come close to the severe handicap experienced by the borderline mentally retarded, illiterate defendant in *Mendiola.* We therefore rule that Andaverde's mental condition did not render his statements involuntary.

of the specific statute he is suspected of violating. *United States v. Williams*, 616 F.2d 759, 761 (5th Cir.), *cert. denied*, 449 U.S. 857, 101 S.Ct. 156, 66 L.Ed.2d 72 (1980). The third and fourth factors are more problematic; the issue here is whether the warning given by the police was still in force when Keeth interrogated Andaverde, up to two hours later, almost immediately after the police ceased their questioning.

The courts have generally rejected a *per se* rule as to when a suspect must be readvised of his rights after the passage of time or a change in questioners. In *Wyrick v. Fields*, the Supreme Court reversed the Eighth Circuit's creation of a *per se* rule that *Miranda* warnings must be repeated after a suspect takes a polygraph exam, stressing that courts should look at the totality of the circumstances in each individual case. 459 U.S. 42, 49, 103 S.Ct. 394, 397, 74 L.Ed.2d 214 (1982); *see United States v. Gillyard*, 726 F.2d 1426, 1430 (9th Cir.1984) (refusing to create a contrary *per se* rule that readministration of warnings after polygraph exam is *never* required). This circuit in *United States v. Nordling* considered interrogation of a suspect by narcotics agents after questioning by police. 804 F.2d 1466, 1471 (9th Cir.1986). *Nordling* held that, because the police had advised the suspect of his rights and "no appreciable time had elapsed" between the end of the police interrogation and the beginning of the narcotics investigation, the narcotics agents were not required to readminister the warnings. 804 F.2d at 1471. Similarly, this circuit has ruled that a *Miranda* warning does not lose its efficacy if a defendant is warned by one officer and then interrogated by another. *Jarrell v. Balkcom*, 735 F.2d 1242, 1254 (9th Cir.1984), *cert. denied*, 471 U.S. 1103, 105 S.Ct. 2331, 85 L.Ed.2d 848 (1985).

A number of other circuits have also ruled that rewarning is not required simply because some time has elapsed. As the Fifth Circuit has noted, "[t]here is no requirement

that an accused be continually reminded of his rights once he has intelligently waived them." *United States v. Anthony*, 474 F.2d 770, 773 (5th Cir.1973); *see also Jarrell*, 735 F.2d at 1254 (change in interrogators and three hour interval between warnings did not render statement inadmissible); *United States ex rel. Patton v. Thieret*, 791 F.2d 543, 547 (7th Cir.) (forty minute interval between *Miranda* warning and suspect's statement did not require readministration of warning), *cert. denied*, 479 U.S. 888, 107 S.Ct. 284, 93 L.Ed.2d 259 (1986); *Evans v. McCotter*, 790 F.2d 1232, 1238 (5th Cir.) (finding voluntary waiver of *Miranda* rights where suspect had been twice advised of rights during three hour period, even though warnings were not readministered after a half hour break and change of location), *cert. denied*, 479 U.S. 922, 107 S.Ct. 327, 93 L.Ed.2d 300 (1986); *Stumes v. Solem*, 752 F.2d 317, 320 (8th Cir.) (five hour interval between first and second interview did not by itself invalidate initial waiver which was obtained at the beginning of the first interview), *cert. denied*, 471 U.S. 1067, 105 S.Ct. 2145, 85 L.Ed.2d 502 (1985); *Baskin v. Clark*, 956 F.2d 142, 146 (7th Cir.) (time lapse of thirty minutes between *Miranda* warning and inculpatory statement did not invalidate waiver), *cert. denied*, —— U.S. ——, 113 S.Ct. 109, 121 L.Ed.2d 67 (1992).[6]

On these facts, we see no qualitative difference between custodial questioning by a probation officer and questioning by another law enforcement officer. Thus, this case is very much like *Nordling*. As in *Nordling*, Andaverde was *Mirandized* and then, almost immediately after being questioned by police, was questioned by another law enforcement officer, in this case Corrections Officer Keeth. Here, the two interrogations were an uninterrupted sequence of events. Schenck's presence during Keeth's questioning rendered the Keeth interrogation essentially a part of the police interrogation. Certainly, the two interrogations were so interconnected in time, subject matter, and by Schenck's

---

6. This circuit has also analyzed unreasonable pre-arraignment delay and its effect on voluntariness. *United States v. Asuncion*, 973 F.2d 769, 771 (9th Cir.1992) (considering 18 U.S.C. § 3501(c)); *United States v. Wilson*, 838 F.2d 1081, 1087 (9th Cir.1988) (considering voluntari-

ness of confession under § 3501(b) and observing that unreasonable pre-arraignment delay "may suggest involuntariness of the *Miranda* waiver"). However, because Andaverde does not argue unreasonable pre-arraignment delay, we need not consider that line of cases here.

presence that Andaverde must have known that his rights had not materially changed simply because he had been moved into a different room and faced a new interrogator. *See United States v. Hopkins,* 433 F.2d 1041 (5th Cir.1970), *cert. denied,* 401 U.S. 1013, 91 S.Ct. 1252, 28 L.Ed.2d 550 (1971). The ten minute interval and the change in interrogators therefore did not require a readministration of *Miranda* warnings. Thus, the third and fourth factors of 18 U.S.C. § 3501(b) weigh on the side of voluntariness, and they mitigate the effect of the fifth factor, the absence of Andaverde's counsel. Because four out of the five factors support voluntariness, we find that Andaverde's statement on October 27 to his probation officer was voluntary.

### B.

The district court also found that Andaverde's statement to Keeth the next day, October 28, was voluntary. We agree.

The first statutory factor, time between arrest and arraignment, weighs in favor of voluntariness because the statement was made only one day after arrest so that it was not elicited by the pressures of lengthy confinement. The second factor also supports voluntariness, because Andaverde knew that he was being charged in connection with the firearm.

Keeth did not advise Andaverde of his rights before questioning him on October 28. However, Andaverde had been given a *Miranda* warning by the police shortly before he was interviewed by Keeth the preceding day. As previously discussed, a number of courts have held that an interval between a *Miranda* warning and a defendant's statements does not nullify the warning. Indeed, one circuit has found that an interval of almost two weeks does not mandate new *Miranda* warnings. *Biddy v. Diamond,* 516 F.2d 118 (5th Cir.1975), *cert. denied,* 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 194 (1976); *see also Martin v. Wainwright,* 770 F.2d 918, 930 (11th Cir.1985) (a one week interval between defendant's waiver and subsequent confession did not make new warnings necessary, when defendant indicated he still understood his rights at the time of the confes-

sion), *modified,* 781 F.2d 185, *cert. denied,* 479 U.S. 909, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986); *United States ex rel. Henne v. Fike,* 563 F.2d 809 (7th Cir.1977) (no readministration of warnings required, despite nine hour gap between warnings and subsequent waiver), *cert. denied,* 434 U.S. 1072, 98 S.Ct. 1257, 55 L.Ed.2d 776 (1978); *Ballard v. Johnson,* 821 F.2d 568, 571–72 (11th Cir.1987) (three to four hour gap between waiver of rights and third confession did not render statement inadmissible). Under the circumstances here, the one day interval between the *Miranda* warning and waiver, and Andaverde's October 28 statement to Keeth was not unreasonable. Thus, the third and fourth statutory factors weigh on the side of voluntariness, and mitigate the absence of Andaverde's counsel. Four out of five of the 18 U.S.C. § 3501(b) factors thus weigh in favor of voluntariness. We rule that Andaverde's second statement to Keeth, as well as his first, was voluntary, and was properly admitted as evidence by the district court.

### IV.

Andaverde also contends that his statements to ATF Agent Wyatt should have been excluded at trial because he failed expressly to waive his *Miranda* rights. We review a defendant's waiver of *Miranda* rights under the "clearly erroneous" standard. *United States v. Doe,* 819 F.2d 206, 209 (9th Cir.1985). We affirm the district court on this issue.

While a waiver of *Miranda* rights must be both intelligent and voluntary, the waiver need not be explicit. *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979). In some cases, a defendant may implicitly waive his *Miranda* rights, even if he remains silent. *Id.* at 373, 99 S.Ct. at 1757. We ruled in *United States v. Heldt* that a refusal to sign a waiver form is an "indication" that the defendant is invoking his right to silence which "casts initial doubt" on the government's waiver claim. 745 F.2d 1275, 1277 (9th Cir.1984). The *Heldt* case is a strong statement as to the preclusive effect of a suspect's refusal to sign a waiver form, al-

though in that case there were a number of other circumstances showing that the confession was involuntary. For example, there was testimony that the defendant verbally refused to answer questions and was "exhorted" to answer by the police. *Heldt*, 745 F.2d at 1277–78. Here, Andaverde initially did not expressly refuse to answer questions, nor did Wyatt "exhort" him to do so. Indeed, Wyatt testified that Andaverde had initiated the interview. Furthermore, the fact that Andaverde later in the interview expressly invoked his right to silence demonstrates that he was conscious of his right to remain silent, and that he was cognizant of the need to do so. The *Heldt* court feared that suspects might construe their refusal to sign a waiver as sufficient to prevent police use of subsequent statements. 745 F.2d at 1278–79. This concern is not implicated here, because Andaverde's later express assertion of his *Miranda* rights shows that he was aware that he had not previously invoked his right to silence.

The Seventh and Eighth Circuits, and a number of other circuits, have stated that a refusal to sign a waiver form does not show that subsequent statements are involuntary. *United States v. Kord*, 836 F.2d 368, 375 (7th Cir.) (defendant refused to sign waiver form, saying "I never sign anything," but subsequently made oral statements to the police), *cert. denied*, 488 U.S. 824, 109 S.Ct. 72, 102 L.Ed.2d 49 (1988); *Martin v. United States*, 691 F.2d 1235, 1239 (8th Cir.1982) (defendant refused to sign waiver form but immediately made oral statements), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983); *see North Carolina v. Butler*, 441 U.S. at 375 n. 5, 99 S.Ct. at 1758 n. 5 ("The Courts of Appeal have unanimously rejected the ... argument that refusal to sign a written waiver form precludes a finding of waiver."). *But see McDonald v. Lucas*, 677 F.2d 518, 522 (5th Cir.1982) (holding that, after defendant refused to sign waiver form and in the absence of words or actions implying a waiver, defendant's response to questions was involuntary and inadmissible).

The voluntariness of Andaverde's statement is a close question under *Heldt*, but because this case is factually distinct, we hold that the district court's admission of Andaverde's statements was not clearly erroneous.

**V.**

 Andaverde next contends that the district court erred in admitting evidence pertaining to the sporting goods store burglary, which was the basis for the search warrant. First, Andaverde argues that the evidence did not meet the requirements of Fed.R.Evid. 404(b) for admissibility as other crimes evidence. Secondly, Andaverde argues that because his original burglary conviction in 1991 was before the jury, the evidence relating to this other burglary was unduly prejudicial. Whether testimony constituted "other crimes" evidence under Fed. R.Evid. 404(b) is a question of law which we review de novo. *United States v. Soliman*, 813 F.2d 277, 278 (9th Cir.1987). We review for abuse of discretion the district court's determination under Fed.R.Evid. 403 of whether the probative value of a piece of evidence is outweighed by its prejudicial effect. *United States v. Kessi*, 868 F.2d 1097, 1107 (9th Cir.1989). The government asserts that this evidence was not admitted as evidence of other crimes but was "inextricably intertwined" with the case and provided the necessary context of the charge for the jury. The government's argument is persuasive. We therefore analyze the evidence under Fed.R.Evid. 403, and we affirm the district court.

A review of the record shows that the references to the burglary were not extensive. One police officer testified that:

> There had been a burglary of a business on Lincoln Avenue in Sunnyside. Several items had been taken from the business. Myself and Detective Schenck responded to that burglary scene. While there, we were informed of some information by a couple of patrol officers that were there. Based on their information and things that we observed, Detective Schenck ultimately requested and obtained a search warrant for a residence to recover items believed to have been taken.

A second police officer, Detective Schenck, also referred to the burglary as being the reason for obtaining the search warrant for

Andaverde's home. The record shows that the references to the sporting goods store burglary supplied background for the police's behavior and were not so prejudicial that it was an abuse of discretion for the district court to have admitted the evidence.

## VI.

 In light of our recent decision in *United States v. Cruz*, 50 F.3d 714 (9th Cir. 1995), the government concedes that Andaverde should prevail on his appeal of his conviction under 18 U.S.C. § 922(j). We held in *Cruz* that 18 U.S.C. § 922(j), which prohibits receipt of any stolen firearm which has traveled in interstate commerce, applies only to firearms which traveled in interstate commerce *after* they were stolen.[7] *Id.* at 715. At trial in this case, the government failed to show that the stolen shotgun moved in interstate commerce after it was stolen. Our decision in *Cruz* thus requires reversal of Andaverde's conviction under the statute.

## VII.

We affirm the district court's ruling that prosecution of Andaverde under 18 U.S.C. § 922(g)(1) does not violate the Fifth and Tenth Amendments, and that the statute applied to Andaverde as a convicted felon because his civil rights had not been substantially restored. We also affirm the district court's ruling as to the voluntariness of Andaverde's statements to his probation officer and the ATF agent. We affirm the district court's admission of evidence of the burglary under Fed.R.Evid. 403. Lastly, we reverse Andaverde's conviction under 18 U.S.C. § 922(j) for receiving a stolen firearm, because of our recent opinion in *United States v. Cruz.*

AFFIRMED in part, REVERSED in part.

---

7. The *Cruz* court considered the same version of this statute as involved in this case. *Cruz,* 50

F.3d at 715 n. 1.