584

**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Thomas CHANG, Defendant—**
**Appellant.**

**No. 02–50590.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 9, 2003.

Decided Nov. 4, 2003.

George Aguilar, AUSA, Renee M. Bunker, USSD–Office of the U.S. Attorney, San Diego, CA, for Plaintiff-Appellee.

Mark F. Adams, Esq., San Diego, CA, for Defendant–Appellant.

Before: REINHARDT, FERNANDEZ, and RAWLINSON, Circuit Judges.

## MEMORANDUM *

Thomas Chang was convicted by a jury of two counts of criminal conduct: (1) importation of 94.8 kilograms of a List I chemical, pseudoephedrine, into the United States from a place outside in violation of 21 U.S.C. § 957(a)(1), 971, and 960(d)(6); and (2) knowingly facilitating the transportation of pseudoephedrine after importation, knowing that such importation had occurred contrary to law, in violation of 19 U.S.C. §§ 1484, 1485 and 18 U.S.C. § 545. Both offenses involved customs violations and were regulatory in nature.[1] Following

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. "Regulatory" is used here to refer to statutory and guideline provisions that punish importation in violation of the customs laws, as opposed to "manufacturing" provisions that punish manufacturing, or importation with

the intent to manufacture. *Cf.* § 2D1 (Chapter entitled "Unlawful *Manufacturing,* Importing, Exporting, Trafficking, or Possession") *with* § 2D3 (Chapter entitled "Regulatory Violations"); *cf. also* 21 U.S.C. § 960(d)(7) (*"manufactures* ... a listed chemical[.]"); § 960(d)(1)("imports or exports a listed chemical with intent to *manufacture* a controlled substance[.]"); § 960(d)(3)("imports

motions concerning the applicable sentencing guidelines, the district court sentenced Chang on Count 1 pursuant to the regulatory offense guideline, U.S.S.G. § 2D3.1, to fifteen (15) months in prison. On Count 2, the court determined, pursuant to the Guidelines' Appendix A Statutory Index, that the customs taxes guideline, § 2T3.1(c), applied to Chang's conviction, but that under the Section (c) cross reference provision of that guideline, Chang should be sentenced pursuant to the drug manufacturing guideline, § 2D1.11. Because the guideline sentence under § 2D1.11 was far higher than the statutory maximum for the offense of which Chang was convicted on Count 2, he was sentenced to the statutory maximum-sixty (60) months.

Chang appeals, arguing that the district court erred (1) in permitting the introduction of Chang's post-arrest statements because the statements were involuntary and proper *Miranda* warnings were not given; and (2) in applying the drug manufacturing guideline, § 2D1.11, instead of the regulatory offense guideline, § 2D3.1, when calculating the base offense level on Count 2. We *affirm the district court with respect to* the first claim. With respect to the second, we vacate and remand.

## I

Chang argues that the totality of the circumstances demonstrates that his post-arrest statements were not voluntarily made and should have been suppressed. The district court made a thorough record of its factual findings on this issue and concluded that the questioning occurred "according to the book," that the agent's testimony at the hearing was "absolutely credible," that the *Miranda* warnings were given, that they were knowingly and intelligently waived, and that Chang voluntarily made a statement. Nothing in the record calls these findings into question. Further, we have upheld the use of mirandized statements at trial in much more troubling circumstances. *See e.g. U.S. v. Andaverde*, 64 F.3d 1305, 1313 (9th Cir.1995)(lapse of time of one day between the waiver of rights and questioning "was not unreasonable"); *U.S. v. Gamez*, 301 F.3d 1138 (9th Cir.2002)(statements voluntary though defendant was detained for 31 hours and was fed only once). Accordingly, we find that Chang's confession was voluntary, and we affirm his conviction.

## II

As to Chang's sentencing claim, both parties agree that the first stop in the determination of the applicable offense

---

or exports a listed chemical knowing, or having reasonable cause to believe, that the chemical will be used to *manufacture* a controlled substance[.]") *with* § 960(d)(6)("imports or exports a listed chemical in violation of section 957 or 971 of this title."); § 957("[n]o person may (1) import into the customs territory of the United States … *unless there is in effect with respect to such persons a registration[.]*"); § 971 ("[e]ach registered person who imports or exports a listed chemical shall notify the Attorney General … not later than 15 days before the transaction is to take place."); § 545 (punishing "[w]hoever knowingly and willfully, with intent to defraud the United States, smuggles

… into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper; or [w]hoever fraudulently or knowingly imports or brings into the United States any merchandise contrary to law …"); 19 U.S.C. § 1484 ("… one of the parties qualifying as 'importer of record'… shall … make entry therefor by filing with the Customs service …"); § 1485("[e]very importer of record making an entry under the provisions of section 1484 of this title shall make and file … a declaration under oath …").

guideline for Count 2 is at U.S.S.G. § 2T3.1(c); the dispute arises over where to go from there. Because sections (a) and (b) of § 2T3.1 are not applicable to List I chemicals, section (c) of Sentencing Guideline § 2T3.1–the cross reference provision–instructs the sentencing court to apply "another offense guideline." Section 1B1.3 of the Guidelines provides that "cross references in Chapter 2 ... shall be determined on the basis of ... all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1); *see also* U.S.S.G. § 1B1.1(1)(Commentary)(defining "offense" as "the offense of conviction" *and* "all relevant conduct under § 1B1.3"). The government contends that the district court properly determined that Chang's relevant conduct was proven by clear and convincing evidence at trial–in particular, his testimony that he packaged and repackaged the pseudoephedrine at issue–and that his conduct constituted violations of 21 U.S.C. § 960(d)(7) and § 959, statutory sections that, under Appendix A, refer the court to the drug manufacturing guideline § 2D1.11.[2] Chang argues that the district court should have construed § 2T3.1(c) as directing it to the regulatory offense guideline § 2D3.1. That guideline prescribes punishment for violations of the smuggling provision 21 U.S.C. § 960(d)(6), rather than the more serious drug manufacturing offenses which are proscribed by, *inter alia,* (d)(7). Chang argues that had the government believed it had the evidence to prove that he knowingly or intentionally manufactured a listed chemical it

should have tried him under (d)(7) or some other manufacturing section, instead of on one count under § 545 and another under § 960(d)(6), both of which cover regulatory smuggling violations.

On the facts of this case, we agree with Chang. In the initial complaint, the government charged him with a violation of a manufacturing offense, § 960(d)(3). Thereafter, the government appeared to waver in its theory of the case, issuing several superceding indictments before finally charging him with two regulatory counts involving smuggling. Section 1B1.1(1) directs the sentencing court to look to the "offense of conviction" *as well as* the "relevant conduct." While it is not entirely clear what a sentencing court should do where the *uncharged* and relevant conduct constitutes an entirely separate and far more serious offense than the offense of conviction, we conclude that where the government has already elected to characterize the underlying crime as merely regulatory (for example, the 960(d)(6) violation in count 1), a court may not use 2T3.1(c) to direct sentencing to a guideline that is based entirely on a much more severe underlying crime (here a 960(d)(7) violation leading to 2D1.11). Here, looking to the uncharged conduct rather than the offense of conviction serves to increase by five-fold the base offense level in Chang's case, from 6 under the regulatory guideline to 30 under the manufacturing guideline, and the applicable guideline sentence from 0–6 months,[3] to 97 to 121 months, respectively.

---

**2.** Section 960(d)(7) penalizes a person who "knowingly or intentionally manufactures ....a listed chemical in violation of Section 959," where § 959 prohibits the "manufacture [of a] listed chemical ... intending ... that such chemical will be unlawfully imported into the United States," and "manufac-

ture" includes "any packaging or repackaging." 21 U.S.C. § 802(15).

**3.** Although Chang was sentenced pursuant to § 2D3.1 for Count 1, he received a 15 month sentence, rather than a sentence of 0–6 months, because the court elected to depart upwards 6 levels.

In this instance, because the drug manufacturing violation is entirely different from the regulatory offense of smuggling, the government may not deviate at the sentencing phase from its fundamental choices in its charging decision. The court may not apply the guideline applicable to the alternative and far more serious offense that the government chose not to pursue. A contrary result would be inconsistent with the structure and theory of the Guidelines, as well as with the thrust of our sentencing jurisprudence, which requires a nexus between the offense of conviction and the offense guideline section that is lacking here.

We conclude that on the facts of this case basing a guideline sentence on an entirely different type of offense from the offense of conviction, where the former proscribes a guideline range far in excess of that applicable to the latter, is "inappropriate," and thus contrary to the provisions of the guidelines. *See, e.g.,* App. A, Intro. (If the specified guideline section is "inappropriate," the sentencing court should apply the guideline "most applicable to the nature of the offense conduct *charged.*"); § 1B1.2(a)(instructing sentencing courts to "determine the offense guideline section ... most applicable to the offense of conviction (i.e. *the offense conduct charged in the count of the indictment of which defendant was convicted")); U.S. v. Crawford,* 185 F.3d 1024, 1028 (9th Cir.1999)(Typically, "relevant conduct does not come into play until the correct offense guideline has been selected" based on the offense conduct charged.). At least this is so when a guideline provision is designed to direct the sentencing court from the guideline encompassing the offense of conviction to the most appropriate, though otherwise unrelated, supplemental guideline. Accordingly, we vacate the sentence and remand for resentencing. The sentence on

Count 2 should be imposed in accordance with section 2D3.1 of the guidelines.

AFFIRMED in part, VACATED AND REMANDED, in part.