**UNITED STATES of America**

v.

**Cyrus R. SANDERS, Appellant.**

No. 98–7273.

United States Court of Appeals, Third Circuit.

Argued Nov. 17, 1998.

Decided Jan. 21, 1999.

Kyle W. Rude (Argued), Williamsport, PA, for Appellant.

David M. Barasch, U.S. Attorney, Theodore B. Smith, III (Argued) Asst. U.S. Attorney, Dennis C. Pfannenschmidt, Asst. U.S. Attorney, Harrisburg, PA, for Appellee.

Before: BECKER, Chief Judge, GREENBERG, Circuit Judge, and McLAUGHLIN, District Judge*

## OPINION OF THE COURT

McLAUGHLIN, District Judge.

Prior to its amendment effective September 13, 1994, 18 U.S.C. § 922(j) made it unlawful "for any person to ... sell[ ] or dispose of any stolen firearm ... which has been shipped or transported in [interstate commerce], knowing or having reasonable cause to believe that the firearm ... was stolen." 18 U.S.C.A. § 922(j) (West 1976) and Historical and Statutory Notes to 1990 Amendment (West Supp.1998). Appellant Cyrus Sanders, Jr. was convicted in the United States District Court for the Middle District of Pennsylvania for violations of this provision upon entering a plea of guilty to charges of trafficking and conspiring to traffic in stolen firearms. It is undisputed that the transactions for which Sanders was convicted involved the sale and disposal of firearms that had entered the stream of interstate commerce prior to their theft, but not thereafter.

Sanders now appeals the District Court's denial of his motion to set aside, correct, or vacate his sentence under 28 U.S.C. § 2255. Appellant claims that his counsel was ineffective in advising him to plead guilty to the trafficking charges inasmuch as the applicable version of § 922(j) did not prohibit his particular conduct. We are thus called upon to determine whether § 922(j), prior to its amendment in 1994, was intended to apply to transactions in stolen firearms where the weapons moved in interstate commerce only prior to being stolen. We conclude that it was. Accordingly, we affirm the District Court's order.

## I. BACKGROUND

On January 24, 1996, a federal grand jury in Pennsylvania returned a four-count indictment against Sanders charging him with conspiracy to possess a firearm as a convicted felon and to traffic in stolen firearms [Count I], possession of a firearm by a convicted felon [Count II], trafficking in stolen firearms in violation of 18 U.S.C. § 922(j) [Count III], and retaliating against a witness [Count IV]. The government alleged that, between September 1990 and April 1994, Sanders conspired with two other individuals to burglarize several residences in remote locations. Once inside the residences, Sanders and his cohorts would steal items with potential resale value, including firearms. Other firearms were obtained by providing false information to legitimate gun dealers. In all, a total of forty-four guns ultimately were attributed to Sanders. These firearms were sold to private individuals and legitimate dealers, often at gun shows. All of the firearms at issue were disposed of in Pennsylvania and never entered interstate commerce after Sanders came into possession of them.

The scheme finally ended after one of Sanders's fellow conspirators was arrested and began cooperating with law enforcement officials. Following his own indictment, Sanders agreed to plead guilty to the charges of trafficking and conspiring to traffic in stolen firearms on the advice of his attorney. In exchange for his plea, the remaining charges against him were dismissed. The District Court subsequently sentenced Sanders to a seventy-month term of incarceration.

On January 14, 1998 Sanders filed a motion to set aside, correct, or vacate his sentence pursuant to 28 U.S.C. § 2255. Sanders

---

* Honorable Sean J. McLaughlin, United States District Judge for the Western District of Pennsylvania, sitting by designation.

claims that he committed no violation of the law with respect to the trafficking charges set forth in Counts I and III and, therefore, his attorney was ineffective in advising him to plead guilty to those charges. More specifically, Sanders contends that the version of 18 U.S.C. § 922(j) in effect at the time of his conduct required that the firearms which are the subject of the trafficking offense enter interstate commerce as stolen firearms, i.e., *after* being stolen. Sanders further claims that he was prejudiced by his counsel's ineffectiveness. He theorizes that, if he had been able to successfully challenge the trafficking charges under Counts I and III, he might have had an additional "bargaining chip" with which to negotiate a better plea offer.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over the instant appeal pursuant to 28 U.S.C. § 2255 and § 1291. *United States v. Cleary*, 46 F.3d 307, 309 (3d Cir.1995). Because our disposition of this appeal ultimately turns on an interpretation of statutory law, we apply a plenary standard of review. *See Parrish v. Fulcomer*, 150 F.3d 326, 328 (3d Cir.1998) (legal component of an ineffective assistance of counsel claim in the habeas context is subject to plenary review) (addressing claim under 28 U.S.C. § 2254).

## III. DISCUSSION

### A.

Initially, we must address the government's argument that Sanders has procedurally defaulted his present claim by failing to raise it either in the District Court or on direct appeal. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and 'actual prejudice,' ... or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) (internal citations omitted). We will limit our

inquiry, as the parties have, to the issue of whether Sanders has shown "cause" and "actual prejudice" for his procedural default.[1]

Sanders contends that he can establish "cause" by virtue of his counsel's ineffectiveness in advising him to plead guilty to the trafficking and conspiracy charges under Counts I and III of the indictment. A showing of ineffectiveness of counsel which rises to the level of a constitutional deprivation can indeed constitute the type of prejudice that will excuse procedural default. *See Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Sistrunk v. Vaughn*, 96 F.3d 666, 675 (3d Cir.1996) (state prisoner habeas claim); *United States v. Essig*, 10 F.3d 968, 979 (3d Cir.1993) (recognizing principle but declining to consider it on appeal). *Accord United States v. Guerra*, 94 F.3d 989, 993–94 (5th Cir.1996); *United States v. Cook*, 45 F.3d 388, 392 (10th Cir.1995). To prevail on such a claim, however, a defendant must show both that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that counsel's deficiencies prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Sistrunk*, 96 F.3d at 670.

The district judge rejected Sanders's ineffective assistance of counsel claim based on a two-part analysis. First, the judge observed that the government had acquired overwhelming evidence of Sanders's guilt. He therefore considered it reasonable for defense counsel to presume that Sanders would ultimately be convicted by a jury. The district judge then engaged in a lengthy and detailed analysis of the potential ramifications of Sanders's plea agreement for purposes of sentencing. He essentially predicted that Sanders benefitted from his plea agreement because he faced less potential jail time than he might otherwise have faced if convicted on the felon-in-possession charge under Count II of the Indictment. In light of these circumstances, the judge found that defense counsel acted reasonably in not mov-

---

1. In light of our disposition of this appeal, Sanders would be unable in any event to establish his

"actual innocence" with respect to the § 922(j) charges.

ing to dismiss the trafficking charge and instead advising Sanders to plead guilty to that charge and the related conspiracy charge.

On appeal, Sanders argues that, regardless of the District Court's *ex post* calculation of his supposed sentence on Counts I, II, and IV, he would have been in a better plea bargaining position to receive a shorter sentence if Count III and part of Count I had been dismissed. However, we need not reach this issue. Because we conclude that Sanders did in fact engage in prohibited conduct under Counts I and III of the indictment, it necessarily follows that Sanders's counsel was not ineffective in advising him to plead guilty to those charges rather than attempting to have them dismissed. It further follows that Sanders's § 2255 claim would inevitably fail on the merits, as he can demonstrate no legitimate basis for withdrawal of his guilty plea or for vacating his sentence. We turn, then, to our examination of the operative statutory provision.

### B.

It is undisputed that the conduct for which Sanders was charged occurred between September 1990 and April 1994. The parties therefore agree that, for purposes of this case, we must apply 18 U.S.C. § 922(j) as it existed following its amendment in 1990 and prior to its amendment effective September 13, 1994. *See* 18 U.S.C.A. § 922(j) (West 1976) and Historical and Statutory Notes to § 922, 1990 Amendment (West Supp.1998). This version of § 922(j) reads as follows:

It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

*Id.*

Sanders interprets the foregoing language to mean that the subject firearm must have traveled in interstate commerce *as a stolen firearm*—i.e., the theft must have occurred prior to the stolen firearm's movement in interstate commerce. The government interprets this same language to mean only that the firearm which is the subject of the trafficking offense must have passed in interstate commerce at some time, whether before or after it was stolen. The significance of these differing interpretations is clear. Under the first interpretation, Sanders did not commit a violation of § 922(j) because the firearms of which he disposed never passed through interstate commerce after he stole them. Under the government's interpretation, Sanders did in fact commit a violation of § 922(j) and, therefore, his counsel could not have been ineffective in failing to have those charges dismissed.

■ In ascertaining the meaning of a statutory provision, we are instructed to "look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990) (citations omitted). *See also McElroy v. United States,* 455 U.S. 642, 658, 102 S.Ct. 1332, 71 L.Ed.2d 522 (1982) (Court looks to statutory language and legislative history in determining Congress's intent). If a "reasonable doubt persists about a statute's intended scope even *after* resort to 'the language and structure, legislative history, and motivating policies' of the statute," *Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990) (emphasis in original), then the rule of lenity applies and the statute is to be narrowly construed. *Id.* (citations omitted); *Crandon,* 494 U.S. at 158, 110 S.Ct. 997.

On its face, § 922(j) appears to be susceptible to two alternative interpretations. On the one hand, it can be argued that the phrase "which has been shipped or transported in [interstate commerce]" modifies only the word "firearm" and that the term "stolen firearm" merely indicates the status of the firearm at the time of the proscribed transaction. This is the view adopted by the government. The result of this interpretation is that an offense is committed when a stolen

firearm is sold, disposed of, etc. by one having reason to know that it was stolen, as long as the firearm passed through interstate commerce at some time, whether before or after its theft. On the other hand, Sanders urges that the phrase "which has been shipped or transported in [interstate commerce]" modifies the phrase "stolen firearm," such that the firearm must have moved through interstate commerce *as a stolen firearm*. We view each of these proposed interpretations as facially plausible.

If there is any ambiguity in the language of § 922(j), however, we think it is resolved by reference to the legislative history. It is instructive to note the prior version of § 922(j) which, until its amendment in 1990, stated:

> It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, or which constitutes, interstate or foreign commerce, knowing *or having reasonable cause to believe* that the firearm or ammunition was stolen.

Federal courts applying this provision had interpreted it as requiring two elements: first, the firearm's movement through interstate commerce had to be on-going at the time of the underlying trafficking offense, *see United States v. Jones,* 564 F.2d 1315, 1316 (9th Cir.1977), *United States v. Ruffin,* 490 F.2d 557, 560–61 (8th Cir.1974); and second, the firearm had to be stolen at the time of its movement through interstate commerce. *See United States v. West,* 562 F.2d 375, 377–78 (6th Cir.1977), *cert. denied,* 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978).

In 1990 Congress amended § 922(j) so as to include within its scope firearms "which ha[ve] been shipped or transported in [interstate commerce]." Pub.L. 101–647 § 2202(a). It is clear from the legislative history that this amendment was intended to expand the jurisdiction of federal courts by broadening the scope of the interstate commerce nexus. In addressing the amendment before the House Judiciary Subcommittee on Crime, Assistant Attorney General Edward S.G. Dennis observed that the change in 922(j) "would expand federal jurisdiction to permit federal prosecution for trafficking in firearms which have been stolen or have had the serial number removed or altered and which have moved in interstate commerce *at any time.*" *Comprehensive Violent Crime Control Act of 1989: Hearing on H.R. 2709 Before the Subcommittee on Crime of the House Committee on the Judiciary,* 101st Cong.2d Sess. 79–80 (1990) (emphasis added). The report of the House Judiciary Committee similarly notes that the amendment to § 922(j) "expand[s] Federal jurisdiction to permit prosecution for transactions involving stolen firearms ... *where the firearms have already moved in interstate or foreign commerce.*" H.R.Rep. No. 681, 101st Cong., 2d Sess., pt. I at 106 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6510 (emphasis added).

Sanders opines that, in enacting the 1990 amendment so as to expand federal jurisdiction under § 922(j), Congress intended to do no more than eliminate the former requirement of contemporaneous interstate commerce travel at the time of the proscribed firearm trafficking offense. In other words, according to Sanders, the provision covers firearms that have come to rest after completing their interstate commerce journey, provided that the firearms were stolen at the time they moved in interstate commerce. As support for this position, Sanders refers us to *United States v. Cruz,* 50 F.3d 714 (9th Cir. 1995), *cert. denied,* —— U.S. ——, 118 S.Ct. 611, 139 L.Ed.2d 498 (1997). In *Cruz,* the Ninth Circuit Court of Appeals specifically considered whether § 922(j), as amended in 1990, applied to the receipt of a stolen firearm which had not traveled in interstate commerce after its theft. The court examined both the language of § 922(j) and its legislative history and concluded that Congress's intent as to the specific scope of the statute remained unclear. It noted, for example, that

> [w]hile the text of [Assistant Attorney General] Dennis's statement tends to support an expansive interpretation, a footnote remarks that under § 922(j) and (k) (prior to amendment), it was an offense to traffic in such firearms only 'if they are

actually moving in or a part of interstate commerce at the time of the offense,' *id.* at 80 n. 10, which tends to support the less expansive interpretation that the legislation was aimed at removing the contemporaneousness requirement rather than the requirement of travel in interstate commerce as a stolen weapon.

50 F.3d at 718. With respect to the report of the House Judiciary Committee, the Ninth Circuit found the committee's reference to firearms that "have already moved in interstate ... commerce" to be ambiguous since "it could refer either to movement before or after the theft, or only to movement after the theft but before receipt." *Id.* Consequently, the court applied the rule of lenity and held that the statute only applies to trafficking offenses where the subject firearm traveled in interstate commerce *as a stolen firearm.* 50 F.3d at 719.

The government, by contrast, urges us to accept the view of the Sixth Circuit Court of Appeals as set forth in *United States v. Honaker,* 5 F.3d 160 (6th Cir.1993), *cert. denied,* 510 U.S. 1180, 114 S.Ct. 1226, 127 L.Ed.2d 571 (1994). In that case, a majority of the circuit panel held that § 922(j), as amended in 1990, encompasses cases where the stolen firearm moved in interstate commerce only prior to its theft. *Id.* at 162. The majority acknowledged that the language of the statute was somewhat ambiguous but determined that any ambiguity was clarified by resort to the comments of the House Judiciary Committee and the remarks of Assistant Attorney General Dennis. *Id.* The court found that "[t]hese two statements leave no doubt that Congress intended § 922(j) to apply to firearms that have traveled in interstate commerce, both prior to or after being stolen." *Id.* *See also United States v. Staula,* 80 F.3d 596, 605 (1st Cir. 1996) (holding that, under § 922(j), it is sufficient if weapon floats in the stream of interstate commerce at some point prior to the commission of the offense of conviction), *cert. denied,* —— U.S. ——, 117 S.Ct. 156, 136 L.Ed.2d 101 (1996).

We find this latter view to be more compelling than that taken by the Ninth Circuit in *Cruz.* As Judge Guy noted in his concurring opinion in *Honaker,* there is nothing in the legislative history of § 922(j) to suggest that the sole purpose of the 1990 amendment was to end the statute's requirement of contemporaneous interstate movement. *See* 5 F.3d at 164 (Guy, J., concurring). On the contrary, the comments of both the House Judiciary Committee and Assistant Attorney General Dennis regarding Congress's intent to expand federal jurisdiction suggest that "Congress sought to deploy the full extent of federal jurisdiction, as emanating from the Commerce Clause, to combat trafficking in stolen weapons." *Id.* Furthermore, we, like Judge Guy, presume that, if Congress had intended a more narrow purpose, it knew how to say so clearly. *Cf.* 18 U.S.C.A. § 2313(a) (West Supp.1998) (proscribing transactions in "any motor vehicle or aircraft, which has crossed a State or United States boundary *after being stolen,* [by persons] knowing the same to have been stolen") (emphasis added); 18 U.S.C.A. § 2315 (West Supp.1998) (proscribing, *inter alia,* transactions in certain goods, moneys and securities "which have crossed a State or United States boundary *after being stolen* ... [by persons] knowing the same to have been stolen ...") (emphasis added).

■ In sum, then, we conclude that § 922(j), as amended in 1990, was intended by Congress to apply to cases like this one where the stolen firearms traveled in interstate commerce only prior to their theft.[2] In light of this conclusion, Appellant's claim of ineffective assistance of counsel fails. There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument. *See Newsted v. Gibson,* 158 F.3d 1085, 1090 (10th Cir.1998) (§ 2254 claim); *Rodriguez v. United States,* 17 F.3d 225, 226 (8th Cir.1994); *Shah v. United States,* 878 F.2d 1156, 1162 (9th Cir.1989) (citation omitted). According-

---

**2.** Two other circuits have rendered unpublished decisions arriving at the same conclusion. *See United States v. Alford,* 60 F.3d 830 (Table Disposition No. 95–1627), 1995 WL 410983 (8th Cir.

1995); *United States v. Andrews,* 45 F.3d 428 (Table Disposition No. 94–5109), 1994 WL 717589 (4th Cir.1994).

254

ly, the order of the District Court will be affirmed.