Samuel O. KOCH, Petitioner,

v.

SCHUYLKILL COUNTY PRISON, Warden Gerald L. Britton, et al., Respondents.

No. 4:CV–99–2252.

United States District Court, M.D. Pennsylvania.

April 26, 2000.

---

Samuel O. Koch, Pottsville, PA, Pro se.

---

**1.** Title IV of AEDPA must be read in conjunction with the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, 110 Stat. 3009–546

## *MEMORANDUM*

McCLURE, District Judge.

### *BACKGROUND:*

On December 29, 1999, petitioner Samuel O. Koch, then an inmate at the State Correctional Institution at Waymart, Wayne County, Pennsylvania, commenced this action with the filing of a petition for a writ of habeas corpus pursuant to (according to at least one of the documents filed) 28 U.S.C. § 2241. As will be discussed below, the allegations of the petition are not precise, but the crux of the claim is Koch's desire to prevent his incarceration at the Schuylkill County· Prison because he has not received adequate medical treatment at that facility in the past.

In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (1996), which the President signed into law on April 24, 1996. AEDPA made sweeping changes to significant areas of the law, *see, e.g.*, AEDPA Title I (Habeas Corpus Reform); Title IV (Terrorist and Criminal Alien Removal and Exclusion),[1] and the courts have been attempting to deal with the fallout, in the form of litigation, ever since.

In adapting to AEDPA, the courts at times have themselves made procedural changes. An example is the Second Circuit's decision in *Adams v. United States,* 155 F.3d 582 (1998) (*per curiam* ), holding that a district court should provide certain prophylactic warnings to a movant under 28 U.S.C. § 2255 before construing an inartfully pled motion or petition by a *pro se* litigant as a proper § 2255 motion. That holding was adopted as the law of this circuit in *United States v. Miller,* 197 F.3d 644 (3d Cir.1999), and was expanded to cover petitions by state prisoners for writs of habeas corpus under 28 U.S.C. § 2254 in *Mason v. Meyers,* 208 F.3d 414

(1996), which also worked substantial changes in immigration law. See generally *Liang v. INS,* 206 F.3d 308 (3d Cir.2000).

(3d Cir.2000). As the Third Circuit explained in *Miller*, this action is necessary to protect a convicted person's right to present all of his or her claims to a federal court, a right which may be waived or forfeited inadvertently due to AEDPA's stringent limitations on time and successive motions or petitions. However, it also entails ending the practice of construing such motions or petitions liberally when they are filed *pro se* because that action, formerly favorable to the *pro se* litigant, now may have a seriously detrimental effect. *Miller* at 649.

While it may be that the practice of having trial judges educate litigants, *pro se* or otherwise, may be questioned, the Third Circuit apparently felt that these questions are outweighed by the potential unfairness and hardship which might otherwise result, and therefore determined that *pro se* movants under § 2255 and *pro se* petitioners under § 2254 are entitled to the notice described in further detail below. Also, any paper filed by a litigant which appears to be a motion, petition, or other pleading which should be read as a § 2255 motion or a § 2254 petition is entitled to notice that his or her pleading may be re-characterized before any action is taken.

As with AEDPA, however, the creation of this rule (in this district denominated "*Miller* notice," but presumably called "*Adams* notice" in the Second Circuit) has unintended consequences, of which this case is but one example. The problem here is that Koch filed a petition under 28 U.S.C. § 2241 which properly would be a § 2254 petition because he is a state prisoner, but actually should be a complaint under 42 U.S.C. § 1983 because he seeks injunctive, not habeas, relief. The question is whether a prisoner in this situation is entitled to *Miller* notice, and the permu-

tations which arise from the potential actions by the court are rather confusing.

## DISCUSSION:

### I. KOCH'S PETITION

The petition filed by Koch consists of three documents. The first is captioned, "Petition for Writ of Habeas Corpus," followed by a large black mark covering language on what appears to be a pre-printed form. The form therefore appears to be either a standard form of petition or a document from other litigation being used for these purposes. The first line of this document states that the request for a writ of habeas corpus is made pursuant to 28 U.S.C. § 2241(c)(5), which authorizes writs of habeas corpus *ad testificandum* and *ad prosequendum.*[2] In that document, Koch requests that the warden of SCI–Waymart be required to produce him for trial.

The second document filed by Koch appears to be a form order granting the relief requested in the first document.[3]

The third document is denominated "Petition for Writ of Habeas Corpus" and appears to be the actual pleading in the matter. The first two paragraphs are merely standard jury charges concerning consideration of the case as a matter between persons of equal standing and evidence by law enforcement personnel (adapted in this case to prison officials). The third paragraph is a standard jury instruction concerning the Eighth Amendment. These paragraphs have no substantive bearing on the merits of the petition for present purposes.

After a statement that "I will now define each element for you:" (again, apparently a jury instruction), Koch sets forth his factual allegations. They are as follows:

---

**2.** "The writ of habeas corpus shall not extend to a prisoner unless—

. . . .

(5) It is necessary to bring him into court to testify or for trial.
28 U.S.C. § 2241(c)(5)".

**3.** The caption of this document also has language after "Writ of Habeas Corpus" blacked out, as does language within the text of the first document. It seems that the words "ad prosequendum" or "ad testificandum" have been eliminated from the forms/papers from another case.

Koch, designated "Plaintiff" in the petition, will be returning to the Schuylkill County Prison to serve 18 months of incarceration as a result of a parole violation. At the time the petition was filed, Koch was incarcerated at SCI–Waymart, with a release date of April 11, 2000, which would be the expiration of his maximum sentence.

In October, 1994, Koch was incarcerated at the Schuylkill County Prison and suffered a fractured rib. The doctor who saw Koch diagnosed the injury as a rib contusion or bruise. Koch was discharged after 39 days and was examined immediately at the Pottsville Hospital and Warne Clinic. An x-ray revealed "a partially healing nondisplaced fracture of the left tenth rib posterolaterally associated with slight callus formation bridging the fracture site." Petition at 2 ¶ 4. No x-ray was taken at the Prison. Although the rib healed, Koch was forced to suffer extreme discomfort and was not provided a wrap to immobilize the rib, causing a risk of further serious injury.

No date is provided for a second incident alleged by Koch.[4] He complained to an unnamed person that he was not feeling well and asked to be taken to the hospital. He was told that the only way he would be leaving was in a body bag. Koch's condition worsened and he asked again to be taken to the hospital. He was told to stop crying about the matter. Koch then called his brother, who posted bail to take Koch to the Pottsville Hospital, where he was diagnosed with pneumonia.

According to Koch, his medical records would reflect these events.

At the time the petition was filed, Koch was to begin undergoing interferon injections for hepatitis at SCI–Waymart. He claims that a return to the Schuylkill County Prison would be detrimental to his health based on his prior experiences. Also, Koch has newspaper clippings which show that the Prison is having other, unspecified "problems" which warrant issuance of a temporary restraining order and a preliminary injunction to bar his return to the Prison.

In his *ad damnum* clause, Koch seeks only a hearing and a temporary restraining order and/or a preliminary injunction. Koch nowhere alleges that any conviction or the parole revocation violates the Constitution or laws of the United States.

## II. PRELIMINARY MATTERS

Before proceeding to the more extensive analysis occasioned by Koch's petition, we address some preliminary matters. We note first that the request for injunctive relief is not properly before the court. Injunctive relief is granted by order of court. Fed.R.Civ.P. 58(2) (requiring court order for entry of judgment for "other relief"), 65(d) (requiring court order for preliminary injunction or temporary restraining order). Any request for relief from the court (other than final relief) or an order must be in writing and must state both the relief or order sought and the grounds therefor. Fed.R.Civ.P. 7(b)(1). No writing satisfying this requirement has been filed with respect to the request for preliminary injunctive relief.

We construe the first document filed by Koch as a motion for a writ of habeas corpus *ad prosequendum* for purposes of his presence at any hearing or trial of this matter. No hearing or trial has been scheduled and the motion is premature. For statistical purposes, it will be denied. For Koch's benefit, we note that a writ will issue without request should the court schedule any proceeding requiring his presence.

## III. AEDPA PROVISIONS

As will be discussed in the context of the cases we consider, there are several statutory provisions enacted as part of AEDPA

---

4. Koch apparently refers to a time at which he was a pretrial detainee, as he obtained release by the posting of bail.

which are relevant to the issue at hand. Primary among these are the new requirements concerning second or successive motions and petitions. AEDPA § 105(2), 110 Stat. 1220; AEDPA § 106(b), 110 Stat. 1220–1221. A claim asserted in a second or successive motion or petition that was presented in a prior motion or petition must be dismissed. 28 U.S.C. §§ 2244(b)(1), 2255.[5] If a new claim is raised in a second or successive motion or petition, the applicant must move in the appropriate court of appeals for certification that the claim meets certain requirements. Sec. 2244(b)(3)(A)–(C). The requirements are that the claim relies on a new rule of constitutional law made retroactive by the Supreme Court or a factual predicate which could not have been discovered previously despite diligence on the part of the applicant, *and* the facts, if proven, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the applicant guilty but for constitutional error. Sec. 2244(b)(2).

■ Also relevant is the new statute of limitations. AEDPA § 101, 110 Stat. 1217; AEDPA § 105(2), 110 Stat. 1220. Both a petition under § 2254 and a motion under § 2255 are subject to a one-year statute of limitations. Secs. 2244(d), 2255 (sixth unnumbered paragraph). The events which cause the time to begin to run are set forth in each statute, but the limitations period is subject to equitable tolling. *Miller v. N.J. State Dept. of Corrections*, 145 F.3d 616, 617–618 (3d Cir.1998) (motion under § 2255 but noting, at145 F.3d at 619 n. 1, that AEDPA issues under both sections interchangeable if analytically required).

The effect of these provisions is that an applicant for collateral relief would be prudent to include all potential claims in a timely motion or petition, lest he or she find that the claim is barred. Given the substantial obstacles faced by a *pro se* litigant, and particularly one who is incarcerated, such as an absence of legal training and difficulty in accessing legal materials, it is highly unlikely that this type of prudence will be practiced by a *pro se* litigant pursuing a collateral challenge of a criminal conviction.

## IV. CASE LAW

### A. *Adams v. United States*

The concern for a *pro se* litigant's ability to present all of his or her claims in a single application is at the heart of the Second Circuit's opinion in *Adams.* In that case, the movant was convicted of various offenses in 1995 and was sentenced to life in prison, plus 65 years. *Id.* at 582. Acting *pro se,* he filed a motion invoking Fed.R.Crim.P. 12(b)(2), captioned as a motion to dismiss, contesting the district court's jurisdiction. *Id.* at 582–583. The district court construed the application as a motion under § 2255 and denied it. *Id.*

The movant then attempted to withdraw the motion, indicating that he was planning to present all of his "habeas claims" in a single motion which might be barred as successive due to the district court's action. The district court denied the request to withdraw the motion as moot. *Id.*

The Second Circuit first reviewed the history of the common practice of converting applications for collateral relief:

Prior to the enactment of AEDPA, district courts routinely converted post-conviction motions of prisoners who unsuccessfully sought relief under some other provision of law into motions made under 28 U.S.C. § 2255 and proceeded to determine whether the prisoner was entitled to relief under that statute. This was done most frequently in the cases of pro se litigants who sought relief under a statute or rule that accorded no relief—often Fed.R.Crim.P. 35—in order to determine whether they might be entitled to relief under § 2255, with-

**5.** Section 2255 is not divided into subsections. The provision relating to second or successive motions is the last paragraph of Section 2255.

The same paragraph incorporates the certification procedure of § 2244(b)(3).

out obligating them to replead their motions. In order to relax formalities that might needlessly frustrate pro se petitioners and because the practice was harmless, we affirmed that practice. *See, e.g., United States v. Detrich,* 940 F.2d 37, 38 (2d Cir.1991) (treating motion nominally brought under Fed. R.Crim.P. 35(a) as motion pursuant to § 2255) [, *cert. denied,* 502 U.S. 1121, 112 S.Ct. 1242, 117 L.Ed.2d 475 (1992) ]. The district court followed that well-established practice in this case.

*Adams* at 583.

The Second Circuit then reviewed the changes wrought by AEDPA with respect to the filing of second or successive petitions and observed:

> Thus a conversion, initially justified because it harmlessly assisted the prisoner-movant in dealing with legal technicalities, may result in a disastrous deprivation of a future opportunity to have a well-justified grievance adjudicated. The court's action of conversion which we approved under pre-AEDPA law because it was useful and harmless might, under AEDPA's new law, become extraordinarily harmful to a prisoner's rights. A prisoner convicted pursuant to unconstitutional proceedings might lose the right to have a single petition for habeas corpus adjudicated, solely by reason of a district court's having incorrectly recharacterized some prior motion as one brought under § 2255.

*Id.* at 583–584 (footnote omitted).

■ To remedy this problem but still allow conversion when appropriate, the Second Circuit held that a district court should not convert a motion under another rule to one under § 2255 unless: (1) the movant, understanding the potential consequences, agrees to the conversion; or (2) the court finds that conversion is appropriate, regardless of the designation of the motion, and offers the movant the opportunity to withdraw the motion. *Id.* at 584. Since the district court had not done so,

the Second Circuit vacated the order of the district court and remanded, in doing so, it added in a footnote that the district court also should advise the movant regarding the statute of limitations. *Id.* at 584 n. 2.

### B. *Miller v. United States*

The Third Circuit adopted the reasoning of *Adams* in *Miller v. United States.*[6] In that case, the movant was charged for conduct relating to drug distribution and entered into a plea agreement with the government. *Miller* at 646–647. Unhappy with the calculation of his potential sentence under the Sentencing Guidelines, the movant filed a *pro se* motion to withdraw his plea, asserting that counsel had failed to warn him that he would be treated as a career offender. The district court denied the motion, and the Third Circuit affirmed on direct appeal. *Id.* at 647 (citing *United States v. Miller,* 118 F.3d 1579 (3d Cir.1997) (table)).

The movant then filed two motions in the district court: a motion to dismiss the indictment asserting that the prosecutor knowingly used perjured testimony before the grand jury and a motion for a new trial under Fed.R.Crim.P. 33, apparently based on the same allegation. *Id.* Since the motions were untimely, the district court construed them, collectively, as a motion under § 2255 and denied that motion on the merits. The movant sought to appeal, arguing both that there was prosecutorial misconduct and a lack of jurisdiction. Also, he argued error in the conversion of his motions and to be allowed to file a proper § 2255 motion with additional issues. Once counsel was appointed, he abandoned the perjured-testimony claim, instead arguing that previous counsel had been ineffective for failing to advise the movant that he would be sentenced as a career offender. *Id.*

Like the Second Circuit in *Adams,* the Third Circuit reviewed the longstanding practice of looking behind the label at-

---

**6.** To be distinguished from *Miller v. N.J. State* *Dept. of Corrections,* cited in Part III, above.

tached to a motion by inmates proceeding *pro se* to determine whether the motion is cognizable under some other remedial statutory framework. This practice stems from the courts' obligation to construe *pro se* plaintiffs' pleadings "liberally." *Miller* at 648. This included routinely converting *pro se* applications to motions under § 2255, *id.* (quoting *Adams* at 583), "in order to reach the merits of pro se petitions, while avoiding the wasted time and expense of forcing petitioners to redraft their pleadings." *Id.* (footnote omitted). The district court's recharacterization of the movant's prior motions had been consistent with prior practice, since the court was correct that, after the guilty plea, relief was unavailable under Rule 33 and there was no right to challenge the indictment apart from collateral attack. *Id.* at 648–649 and n. 3.

Had AEDPA not been enacted, the District Court's handling of Miller's motions in this case would pose no problem. AEDPA, however, dramatically altered the form and timing of habeas petitions [7] filed in the federal courts.

*Id.* at 649.

The Third Circuit then reviewed the "twin procedural bars" created by AEDPA, i.e. the statute of limitations and the restrictions on second or successive motions and petitions, observing:

> To avoid making successive claims, petitioners must marshal in one § 2255 writ [sic] all the arguments they have to collaterally attack their convictions. And in order to avoid being time barred, they must take care to file this one all-inclusive petition within one year of the date on which the judgment of conviction becomes final.

*Id.* (citation omitted). The court pointed out the "odd result" obtained by applying a rule intended to assist *pro se* litigants and converting the pleading to a proper motion

or petition, only to impair the ability of the litigant to present potentially valid claims. *Id.* It then summarized the Second Circuit's opinion in *Adams*. *Miller* at 649–650. It rejected a contrary holding by the Fifth Circuit, *In re Tolliver,* 97 F.3d 89 (5th Cir.1996) (*per curiam*), because that opinion lacked analysis and because *Adams* is persuasive. *Miller* at 650–651.

The Third Circuit then summarized its holding and directed the district courts as follows:

> Persuaded by the *Adams* approach, we conclude that district courts should discontinue their practice of automatically treating pro so, post-conviction motions as § 2255 petitions. Rather, upon receipt of pro se pleadings challenging an inmate's conviction or incarceration-whether styled as a § 2255 motion or not-a district court should issue a notice to the petitioner regarding the effect of his pleadings. This notice should advise the petitioner that he can (1) have his motion ruled upon as filed; (2) if his motion is not styled as a § 2255 motion have his motion recharacterized as a § 2255 motion and heard as such, but lose his ability to file successive petitions absent certification by the court of appeals; or (3) withdraw the motion, and file one all-inclusive § 2255 petition within the one-year statutory period. Presumably, the District Court will provide in its notice a time frame for the response.

*Miller* at 652 (footnote omitted).

In the omitted footnote, the Third Circuit directed the district courts to rule on the pleadings as captioned if the movant fails to respond in a timely fashion. Also, it pointed out that the district courts "might see fit" to use the same approach in cases involving pleadings which properly should be brought under § 2254. *Id.* at

---

7. Court's footnote. Although (1) § 2255 is captioned, "Federal custody; remedies on motion attacking sentence," (2) the application results in an order and not a writ, and (3) federal habeas corpus is authorized under § 2241, courts regularly refer to relief under

§ 2255 as "habeas corpus." But see generally United States v. Sanders, 3 F.Supp.2d 554, 556–558 (M.D.Pa.1998) (discussing at length authorities distinguishing between habeas relief and relief under § 2255), judgment aff'd, 165 F.3d 248 (3d Cir.1999).

652 n. 7. This pointed suggestion became the law of this circuit in *Mason. See esp.* 208 F.3d at 417–18. The last point made by the Third Circuit in *Miller* was that the statute of limitations should be tolled to allow the movant to refile the motion or petition. *Id.* at 652–653. "If in the future, a district court failed to provide the necessary warnings proscribed in this opinion, the statute of limitations should similarly be tolled to allow the petitioner an opportunity to file all of his claims in the correct manner." *Id.* at 653.[8]

### C. *Other Opinions*

■ As noted, the Third Circuit in *Mason* extended *Miller* to include petitions under § 2254, consistent with its own suggestion in footnote 7. One other important rule was established in *Mason.* The Third Circuit in *Miller* indicated that a district court providing notice presumably would provide a time frame for a response by the movant. *Miller* at 652. After pointing out that the statute of limitations was tolled to allow the movant to refile, the Third Circuit stated, "He should do so within 120 days or be barred from reconsideration." *Id.* at 653. There was no discussion of why 120 days was an appropriate limit nor any indication that such was intended to be the time frame in every case.[9]

Regardless, in *Mason,* the Third Circuit established 120 days as the time limit for refiling. *Id.* at 419 n. 11. It is not clear whether the 120 days would apply to a response to the notice. Presumably, a movant could be given less time to elect among the options recited in *Miller*, with the 120–day period becoming applicable should the option selected be a refiling of the motion or petition.

Other courts also have noted the concerns addressed in *Adams* and *Miller.* In *United States v. Lomax,* 86 F.Supp.2d 1035 (D.Or.2000), the court reviewed a motion under § 2255 and found that it was untimely. The court specifically declined to find the petition successive based on a recharacterization of an earlier motion. *Id.* at 1036 (citing *Miller* ), 86 F.Supp.2d at 1036 n. 2 (citing *Adams* ). In *United States v. Ailsworth,* No. 94–40017–01–SAC, 1999 WL 706111 (D.Kan.1999), the court quoted from Adams at length, *id.* at *1–*2, allowed the movant to withdraw a motion, *id.* at *3, and held that the motion would not be counted as a first motion under § 2255. *Id.* at *4.

Of particular relevance is the Seventh Circuit's observation concerning a conversion opposite of that discussed:

> [W]e have recognized that converting a case from one kind of action to another can have consequences that the prisoner may not have anticipated. Reclassifying an action for civil damages as a collateral attack may bring the prohibition of successive petitions into play; the opposite conversion may require the prisoner's trust action to be tapped for filing fees and lead to problems under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

*Romandine v. United States,* 206 F.3d 731, 736 (7th Cir.2000).

### V. *CHARACTERIZATION BEFORE RECHARACTERIZATION*

■ Obviously, before recharacterizing Koch's pleading, it is necessary to characterize the document. If the pleading has been accurately denominated, recharacterizing would be unnecessary.

As stated, what appears to be the pleading document is not denominated, but an accompanying document refers to § 2241(c)(5). The accompanying document, however, seems to be merely Koch's attempt to ensure his own presence at any evidentiary hearing or oral argument relating to this matter. It is conceivable,

---

**8.** Although not specified, it appears that the statute of limitations is tolled from the time the motion under consideration is filed in the district court.

**9.** In fact, the movant in Miller already had indicated his intention to file a new, all-inclusive § 2255 motion. If a movant elected to stand on a motion as filed, 120 days would seem a remarkably long time.

however, that the reference is such that a person reading the documents together could conclude that Koch is attempting to proceed under § 2241.

The problem with proceeding under § 2241 is that, while the statute generally confers jurisdiction on federal courts to issue the writ of habeas corpus, *see generally Ngo v. INS*, 192 F.3d 390 (3d Cir. 1999) (immigration case discussing jurisdiction of district courts under § 2241), **reh'g denied**, § 2254 addresses state prisoners directly and therefore governs. That § 2254 governs is especially important because allowing Koch to proceed under § 2241 would be tantamount to allowing him to circumvent the procedural requirements imposed under AEDPA.

Should we characterize Koch's pleading as a petition properly brought under § 2254, he faces further obstacles. First, he has not demonstrated that he has exhausted all of his state court remedies. *See* § 2254(b)(1). Of course, we may deny a petition under § 2254 on the merits absent exhaustion, a result which is more than a mere possibility. Koch's petition addresses problems occurring six years ago and which he claims persist. It is unlikely that he will be able to convince the court that his prior problems make it likely that he will suffer an Eighth Amendment violation sufficient to override the general rule that a prisoner may not choose the place of his incarceration. More importantly, the acts of which Koch complains, presuming the allegations to be accurate, may amount to negligence, but probably are not Eighth Amendment violations.

Regardless of the particular statutory source of authority, however, it is plain that Koch has intended his pleading to be characterized as a petition for a writ of habeas corpus.

Still, apart from all of the foregoing, the relief sought by Koch is an injunction.

That form of relief is appropriate under 42 U.S.C. § 1983, not the habeas statutes. Therefore, it appears most likely that his pleading would be construed as a complaint under § 1983, despite its denomination as a petition for a writ of habeas corpus (under any authority). However, as noted by the Seventh Circuit, converting the petition to a complaint would entail requiring a filing fee and/or tapping Koch's prison account for that amount.[10] In addition, given the questionable merit to such a complaint, Koch risks suffering a "strike" under the "three strikes" provision governing prisoner litigation. *See* 28 U.S.C. § 1915(g).

In other words, regardless of the action taken by the court, it appears that there are serious, adverse consequences to Koch. We therefore must conclude that he is entitled to the notice required under *Miller* and *Mason*.[11] Given the unique circumstances, our standard form of notice will be tailored to fit the case.

We recognize that our manner of proceeding protracts this matter considerably, and that the delay appears contrary to obligations existing under other authorities. *See* Rule 4 of the Rules Governing Section 2254 Cases in the U.S. District Courts, 28 U.S.C. following § 2254 (petition to be examined promptly to determine whether a response is warranted); 28 U.S.C. § 1915A(a) (court to review as soon as practicable a complaint in a civil action by a prisoner seeking redress from a governmental entity). Given the Third Circuit's holdings in *Miller* and *Mason*, however, it appears that "promptly" and "as soon as practicable" under these circumstances now would mean "promptly after receiving a response to the requisite notice" or "as soon as practicable after receiving a response to the requisite notice."

---

**10.** Koch challenges the place, not the lawfulness, of his confinement. Therefore, the Seventh Circuit's other concern, that of ripeness under Heck, is not implicated in Koch's case.

**11.** See esp. *Miller* at 646 (prophylactic rule applies when ruling on pleading to be recharacterized or one which has been denominated as a § 2255 motion).

## VI. CONCLUSION

Koch is entitled under the authorities discussed above to notice of the effect of any recharacterization of his pleading. We therefore will provide such notice and allow him to elect among his options for further proceedings.

An order consistent with this memorandum will issue.