NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 10-2420
_____

UNITED STATES OF AMERICA

v.

VALENTINO HENDERSON, a/k/a Van Henderson

Valentino Henderson,
                              Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Crim. No. 1-06-cr-00234-001)
District Judge:  Hon. Christopher C. Conner
_____

Submitted Under Third Circuit LAR 34.1(a)
July 12, 2011

Before:  SLOVITER, FUENTES, and GARTH, *Circuit Judges*

(Filed: July 14, 2011)
_____

OPINION
_____

SLOVITER, *Circuit Judge*.

Appellant Valentino Henderson, who was convicted by a jury of conspiracy to distribute and possess with intent to distribute cocaine hydrochloride in violation of 21 U.S.C. § 846 and distribution and possession with intent to distribute cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1), appeals from the District Court's order denying him relief under 28 U.S.C. § 2255. Henderson seeks relief claiming that his trial counsel was constitutionally ineffective for failing to move to suppress evidence obtained during the search of Henderson's home on the theory that the consent of Henderson's wife to the warrantless search was involuntary. For the following reasons, we will affirm.

## I.

The Pennsylvania State Police received information from a confidential informant that Henderson was receiving packages of cocaine through the United States Postal Service. Following an investigation, police officers intercepted a package destined for Henderson which contained approximately two kilograms of cocaine hidden within a stuffed animal. Based on this discovery, the police and Postal Inspector Yvette Thomas obtained an anticipatory search warrant to search Henderson's home in the event that he took the package into his home and opened it. However, Henderson placed the package in his car and attempted to drive away with the package in the front seat. He was pulled over and arrested by police waiting at the scene.

Inspector Thomas, who had no warrant, sought to obtain the consent of Henderson's wife to search their home. Mrs. Henderson initially refused to authorize the search and consented only after Inspector Thomas persuaded her to consent.

Inspector Thomas mentioned the possibility that a warranted search could lead to Mrs. Henderson's arrest and the placement of her children in state custody.[1] Inspector Thomas testified that she made no threats, but admitted she told Mrs. Henderson that signing the consent form would be viewed as cooperation and would be "take[n] . . . into consideration [in deciding] whether or not to charge her for whatever contraband was found in the house." App. at 221.

After forty minutes of discussion, Mrs. Henderson signed the consent form. The search discovered pieces of incriminating evidence, including two digital scales with cocaine residue on their trays, UPS shipping envelopes, an empty bottle of the cocaine cutting agent Inositol, two cellular phones, and another stuffed animal with a seam of non-matching thread that had been torn open.

Following the guilty verdict by a jury in the Middle District of Pennsylvania, Henderson filed a petition for writ of habeas corpus under § 2255 claiming, in part,

---

[1] The District Court credited the testimony of Inspector Thomas, implicitly rejecting Mrs. Henderson's testimony where conflicts between the accounts arose. *United States v. Henderson*, No. 1:06-CR-0234, 2010 WL 1565295, at *4 (M.D. Pa. Apr. 19, 2010). We review the District Court's factual findings for clear error, and find none here. Mrs. Henderson had claimed that the following statements were made to her: (1) that a search warrant could "definitely" be obtained; (2) that she could be arrested if drugs were located during the search; and (3) that child protective services could be called to take custody of her children while they "figure all this out." App. at 167-68. Additionally, Mrs. Henderson had claimed that she only consented to the search after Inspector Thomas agreed to the condition that her children would not be taken away.

ineffective assistance of counsel. The District Court denied the petition following an evidentiary hearing. Henderson was granted a certificate of appealability on the issue set forth below.

## II.

The District Court had jurisdiction under 28 U.S.C. § 2255, and this court has appellate jurisdiction under 28 U.S.C. §§ 1291, 2253, and 2255(d). On appeal from the District Court's denial of a habeas petition, we exercise plenary review over the District Court's legal conclusions and apply a clearly erroneous standard to the District Court's findings of fact. *See United States v. Cepero*, 224 F.3d 256, 258 (3d Cir. 2000) (en banc).

## III.

In order to demonstrate that his trial counsel was ineffective in violation of Henderson's Sixth Amendment rights, Henderson must demonstrate that (1) his trial counsel's representation was deficient, and (2) this deficient representation prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Henderson argues that his trial counsel's assistance was deficient for failing to move to suppress evidence obtained from the warrantless search of his home. To satisfy the first prong, Henderson must demonstrate that his motion to suppress would have had merit. *See United States v. Saunders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."). Henderson argues that this motion to suppress would have had merit at trial because coercive threats issued by Inspector Thomas tainted the voluntariness of Mrs. Henderson's consent to the search. *See Schneckloth v. Bustamonte*,

4

412 U.S. 218, 222 (1973) (noting that consent to a search is only valid if "freely and voluntarily given") (internal quotation omitted).

Specifically, Henderson argues that Mrs. Henderson's consent was not voluntary because it was obtained following a threat to place her children in state custody. He relies on the decision in *United States v. Ivy*, where the court held that a threat to place an individual's children in state custody is an "objectively improper police action . . . [that] significantly intensif[ies] the coercive tenor of the request for consent." 165 F.3d 397, 403 (6th Cir. 1998). The facts in *Ivy* are different from those we have here. In *Ivy*, the defendant was detained for one and a half hours before he consented to the search of his home, during which time his infant child was periodically taken from the arms of its mother, and his girlfriend was handcuffed to a table leg. *Id.* at 404.

Because the facts in *Ivy* are not analogous to those before us, we agree with the District Court's statement that "Henderson's invoked concern for family is not *per se* coercive, and did not taint the voluntariness of the consent to search petitioner's house." *Henderson*, 2010 WL 1565295, at *5. The District Court correctly concluded that the circumstances in which Mrs. Henderson's consent was obtained are "easily distinguishable" from those described in *Ivy*. *Id.* Contrary to Henderson's assertion that "[t]he environment [in which Mrs. Henderson's consent was requested] was . . . one dominated by law enforcement," Appellant's Br. at 23, the District Court found that the time of day and Mrs. Henderson's freedom to go about her routine activities undermined any finding of a coercive atmosphere.

5

Moreover, the District Court found that Inspector Thomas did not explicitly threaten Mrs. Henderson concerning her children, as was the case in *Ivy*. Instead, the District Court found that Inspector Thomas "accurately informed [Mrs.] Henderson of the current situation, and the possible outcome if she did not cooperate." *Henderson*, 2010 WL 1565295, at *4. Considering the limited duration and intensity of Inspector Thomas' interaction with Mrs. Henderson relative to that found sufficiently coercive in *Ivy*, we conclude that Mrs. Henderson's consent was not involuntarily coerced. *See also United States v. Santiago*, 428 F.3d 699, 705 (7th Cir. 2005) (finding any analogy to *Ivy* inapt since "the police behaved 'very professionally' and . . . [since] the entire incident took no more than fifteen or twenty minutes and was devoid of any badgering or harassment").

Henderson also argues that Mrs. Henderson's consent was involuntary because Inspector Thomas represented to her that a search warrant could undoubtedly be obtained. Inasmuch as Inspector Thomas did indeed have probable cause to search Henderson's home at the time she requested Mrs. Henderson's consent, we agree with the government that the statement made to Mrs. Henderson that a search warrant could be obtained was not coercive. *See United States v. Sebetich*, 776 F.2d 412, 425 (3d Cir. 1985) (observing that if a police officer has probable cause to search, then statements that a warrant could be obtained are not deceitful representations). The government's conclusion that Inspector Thomas had probable cause to search Henderson's home is correct given that: (1) she possessed information provided by a confidential informant describing criminal activity being conducted out of Henderson's home; and (2) she had intercepted a package containing cocaine destined for Henderson's residence. *See United*

6

*States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) ("probable cause to search can be based on an accumulation of circumstantial evidence that together indicates a fair probability of the presence of contraband at the home of the arrested").

Accordingly, the voluntariness of Mrs. Henderson's consent was not tainted by Inspector Thomas' statements. It follows that the motion to suppress would have lacked merit. Thus, Mr. Henderson has failed to demonstrate that his trial counsel was deficient for failing to make the motion to suppress.

IV.

For the reasons set forth, we will affirm the District Court's order.